COURT OF APPEALS
DECISION
DATED AND FILED

April 19, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP721**

STATE OF WISCONSIN

Cir. Ct. No. **2014CF46**

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

DONALD L. TAPPA,

   DEFENDANT-APPELLANT.

APPEAL from orders of the circuit court for Oconto County: MICHAEL T. JUDGE, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Donald Tappa, pro se, appeals an order denying his motion for postconviction relief under WIS. STAT. § 974.06 (2019-20).[1]   Tappa also appeals a subsequent order denying his motion for reconsideration.   Tappa contends that the circuit court erred by denying his § 974.06 motion without an evidentiary hearing.   We conclude that the court properly denied Tappa's motion without a hearing because the record conclusively shows that Tappa is not entitled to relief.   We therefore affirm.

## BACKGROUND

¶2     Following a jury trial, Tappa was convicted of arson, burglary, three counts of theft, and four counts of criminal damage to property, each count as a repeat offender.   The charges were based on allegations that Tappa broke into the Log Jam Saloon in Oconto in December 2013; forced open and took money from a safe, an automated teller machine (ATM), and a jukebox; and then set fire to the building.

¶3     At trial, the State introduced evidence that Tappa had been seen by a police officer in the vicinity of the Log Jam Saloon approximately one hour before 911 dispatchers first received a report of a fire at that establishment.   In addition, the owner of the Log Jam Saloon testified that the bar had two safes—one of which contained money, while the other did not.   He testified that only the safe containing money had been forced open, which led him to believe that the burglar must have had inside knowledge about where the bar kept its money.   An employee of the Log Jam Saloon testified that she had spoken to Tappa

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

approximately one month before the fire, and he asked her about the bar's money-handling procedures, including where cash was kept. The employee told Tappa which of the two safes in the bar contained cash.

¶4    As relevant to this appeal, evidence obtained from Tappa's cell phone was also introduced at trial. An investigator testified that Tappa consented to a search of his cell phone during an interview approximately two weeks after the fire. A detective trained in electronic forensic recovery testified that he used Lantern and Cellebrite software to extract "user data, call logs, contacts, [and] messages" from Tappa's phone and to access the phone's records of "every time it's turned on and registers on a network." The Cellebrite report showed that Tappa's cell phone had been turned on at "11:58 p.m. and 36 seconds" on the night of the fire. The Lantern report showed that shortly after midnight, Tappa sent a text message to a friend who had accused him of ignoring her, stating: "LOL. I was fucking my life up. Getting in trouble but got away."

¶5    The State also presented testimony from the records custodian for Tappa's cell phone carrier, who testified that she had received and responded to a search warrant seeking text message and phone call records for Tappa's phone number. The records provided by Tappa's cell phone carrier pursuant to the warrant were introduced into evidence at trial.

¶6    Also relevant to this appeal, an investigator testified at trial that the ATM at the Log Jam Saloon "showed evidence of a penetration that looked to be consistent with a drill bit drilling through right behind where the combination dial was, and it also showed several linear cuts from some type of saw." The investigator stated law enforcement "concluded that you would need a reciprocating-style saw to successfully make the cuts that were present in the

steel." The investigator further testified that about two weeks after the fire, Tappa consented to a search of his garage, during which law enforcement found a "black backpack," "a corded Sawzall reciprocating saw," "an impact driver or drill," and "possibly a hacksaw or two." There was no blade in the reciprocating saw, and law enforcement did not locate any reciprocating saw blades in Tappa's garage.

¶7      The investigator also testified that a reciprocating saw "collects or retains … shavings from material the saw is cutting." He explained:

> [A] reciprocating saw has a single blade that inserts into the end of it, and the end is generally maybe two to three inches square, and the blade goes in the top of that and secures in there. So this single blade has teeth on one side, and that saw is designed so that the blade goes up and down, up and down, in and out of the saw, and … the front of the saw where the blade anchors in is kind of a recessed area, so when using one of those saws, that recessed area generally collects sawdust or debris of the things that you're cutting.

¶8      An analyst from the state crime laboratory subsequently testified that he had analyzed evidence collected in connection with this case, including "a backpack and some trace evidence from an ATM machine and an unused saw blade." The analyst explained that he recovered trace evidence, including metal shavings and yellow paint particles, from inside the backpack. He also testified that there were yellow paint particles in the "debris" collected from the ATM. The analyst further testified that he tested an unused yellow DeWalt reciprocating saw blade to see if its paint was consistent with the paint particles found in the backpack and ATM. He found that "[i]n every way [he] could compare them, they were all consistent."

¶9      During his direct examination, the analyst clarified that the saw blade he tested was a "control"—in other words, "[i]t was submitted to see if the

yellow paint [he] found possibly could have came from a DeWalt-type saw blade." On cross-examination, the analyst conceded that while the paint particles from the backpack, the ATM, and the saw blade were "consistent" and "could be from the same source," it was also a "possibility" that they "could be from separate sources." The analyst confirmed that he did not "make any sort of attempt to go any further into confirming whether the paint found on the ATM or the paint in the backpack was from a specific DeWalt saw blade." He also reiterated that "[t]here was no DeWalt saw blade submitted that was an actual case exhibit. This was a reference sample that they sent."

¶10     The State mentioned the paint evidence in both its opening statement and closing argument. In both instances, the prosecutor acknowledged that while the analyst had concluded that the paint particles from the ATM and backpack were consistent with those from the saw blade, the analyst conceded they could also have come from a different source. Defense counsel also highlighted the inconclusive nature of the paint particle evidence in his opening statement and closing argument, emphasizing that the sample saw blade was only one possible source of the paint particles.

¶11     The jury ultimately returned guilty verdicts on all nine of the charges against Tappa. Tappa—represented by postconviction counsel—then moved for postconviction relief, arguing that his trial attorney was ineffective by: (1) rejecting the State's plea offer; (2) failing to present evidence at trial that Tappa had a large amount of money in his bank account before the fire, which would have contradicted the State's theory that the cash Tappa had in his possession after the fire had been stolen from the bar; (3) failing to request an instruction cautioning the jury not to draw negative inferences from the fact that

the contents of Tappa's computer had been deleted; and (4) failing to object to a witness's reference to Tappa's previous incarceration.

¶12     The circuit court denied Tappa's postconviction motion, following a *Machner*[2] hearing.   Tappa then appealed, renewing his ineffective assistance claims regarding his bank account and the jury instruction.  Tappa also argued that the court had erred by admitting other-acts evidence.   We rejected Tappa's arguments and affirmed.

¶13     Tappa, pro se, subsequently filed a WIS. STAT. § 974.06 motion for postconviction relief, claiming that his postconviction attorney was constitutionally ineffective in two respects and requesting an evidentiary hearing. First, Tappa alleged that his postconviction attorney should have argued that trial counsel was ineffective by failing "to file a motion to suppress the cell phone evidence."   In support of this claim, Tappa asserted he would prove during an evidentiary hearing "that the search warrant affidavit for the cell phone did not establish probable cause to search it."   Second, Tappa argued his postconviction counsel should have argued that his trial attorney was ineffective by failing "to investigate, and to introduce into evidence[,] other known sources of trace evidence"—in particular, "other known sources of yellow [Sawzall] blades." More specifically, Tappa contended that trial counsel was ineffective by failing to find other brands of yellow saw blades that were on the market at the time of the crimes and by failing to argue that the State "did not provide sufficient foundation and authentication" for the DeWalt saw blade that was tested because the State failed to provide a receipt for the saw blade "to show proof of purchase."

---

[2] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

6

¶14  Tappa claimed that his postconviction counsel's ineffective assistance provided a sufficient reason for his failure to raise his new ineffective-assistance-of-trial-counsel claims on direct appeal. He also asserted that the new claims were clearly stronger than the issues raised on direct appeal. In addition, he alleged that postconviction counsel had performed deficiently by "fail[ing] to read the discovery," which prevented counsel from identifying these new claims.

¶15  The circuit court denied Tappa's WIS. STAT. § 974.06 motion without a hearing. The court stated Tappa's assertion that his postconviction attorney had failed to read the discovery was merely a conclusory allegation with no supporting factual basis. The court further concluded that Tappa's new ineffective assistance claims regarding the cell phone and saw blade evidence were not "clearly stronger" than the claims his postconviction attorney had raised on direct appeal. Tappa filed a motion for reconsideration of the court's decision, which the court denied. Tappa now appeals, arguing that the court erred by denying his § 974.06 motion without a hearing.[3]

## DISCUSSION

¶16  A circuit court may deny a defendant's postconviction motion without a hearing "if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief." ***State v.***

---

[3] Although Tappa's notice of appeal purports to appeal from both the order denying his WIS. STAT. § 974.06 motion and the order denying reconsideration, his appellate briefs do not separately address the denial of his motion for reconsideration. We therefore confine our analysis to whether the circuit court erred by denying Tappa's § 974.06 motion without a hearing.

*Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. Whether a motion is facially sufficient, such that the circuit court is required to hold a hearing, is a question of law that we review independently. *Id.* If the motion is facially insufficient, the court has discretion to grant or deny a hearing, and we review its decision for an erroneous exercise of discretion. *Id.*

¶17 In this case, the circuit court properly denied Tappa's WIS. STAT. § 974.06 motion without a hearing because the record conclusively shows that Tappa is not entitled to relief. A defendant is required to raise all grounds for relief in his or her initial postconviction motion or on direct appeal. *See State v. Escalona-Naranjo*, 185 Wis. 2d 168, 184-85, 517 N.W.2d 157 (1994). As such, a defendant may not raise new claims in a § 974.06 motion unless the defendant establishes a sufficient reason for failing to raise those claims previously. *Escalona-Naranjo*, 185 Wis. 2d at 185; *see also* § 974.06(4). Whether a § 974.06 motion alleged a sufficient reason for failing to bring available claims earlier is a question of law that we review independently. *State v. Romero-Georgana*, 2014 WI 83, ¶30, 360 Wis. 2d 522, 849 N.W.2d 668.

¶18 Ineffective assistance of postconviction counsel may constitute a sufficient reason for failing to raise an available claim in an earlier postconviction motion or on direct appeal. *Id.*, ¶36. To state a claim for ineffective assistance of postconviction counsel, a defendant must demonstrate: (1) that counsel's performance was deficient; and (2) that the deficient performance was prejudicial. *Id.*, ¶39.

¶19 To prove deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.*, ¶40. When a defendant alleges that his or her postconviction attorney was ineffective by

failing to bring certain claims, the defendant must demonstrate that those claims are clearly stronger than the claims postconviction counsel actually brought in order to establish deficient performance. *Id.*, ¶4. To prove prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Id.*, ¶41. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citation omitted).

¶20 Here, Tappa cannot establish that his postconviction attorney was ineffective by failing to raise Tappa's current ineffective-assistance-of-trial-counsel claims because the record conclusively shows that those claims would not have been successful. Consequently, Tappa's current claims are not clearly stronger than the claims postconviction counsel raised, and postconviction counsel therefore did not perform deficiently by failing to raise Tappa's current claims. Moreover, because Tappa's current claims would have been unsuccessful, Tappa cannot show a reasonable probability that the result of his original postconviction proceedings and direct appeal would have been different had postconviction counsel raised those claims. Thus, Tappa cannot show that he was prejudiced by postconviction counsel's failure to do so.

¶21 As noted above, Tappa first argued in his postconviction motion that his postconviction attorney was ineffective by failing to argue that trial counsel should have moved to suppress the "cell phone evidence" that was introduced at trial. Tappa contended this claim was clearly stronger than the claims postconviction counsel raised because there was "no 'nexus' established in the search warrant affidavit to link Tappa's cell phone to the [a]rson," and "[t]he exclusion of this evidence would have prevented the State from incorporating the cell phone evidence during trial proceedings."

¶22 Tappa's argument is premised on the notion that the cell phone evidence obtained during the execution of the search warrant should have been suppressed. As the State correctly notes, however, the damaging cell phone evidence presented at trial would have been unaffected by any challenge to the search warrant. It is undisputed that Tappa consented to a search of his phone during an interview with law enforcement. The Lantern and Cellebrite reports that were produced by that search showed when Tappa's phone was powered on during the night in question and contained the content of his text messages, including the message about "fucking [his] life up" and "[g]etting in trouble." No search warrant was needed for law enforcement to obtain that evidence, as Tappa consented to the search of his phone. *See State v. Artic*, 2010 WI 83, ¶29, 327 Wis. 2d 392, 786 N.W.2d 430 ("One well-established exception to the warrant requirement is a search conducted pursuant to consent.").

¶23 The evidence obtained from Tappa's cell phone carrier via the search warrant merely corroborated the evidence that law enforcement obtained directly from Tappa's phone during the consent search. Tappa does not identify any damaging evidence that was obtained from his cell phone carrier, by way of the search warrant, and introduced at trial that was not cumulative of the evidence obtained during the consent search. Accordingly, Tappa cannot show that he was prejudiced by his trial counsel's failure to move to suppress the evidence obtained during the execution of the search warrant. Any claim that trial counsel rendered ineffective assistance by failing to file a suppression motion therefore would have failed. As such, the record conclusively shows that Tappa's postconviction attorney was neither deficient nor prejudicial by failing to raise an ineffective assistance claim on these grounds.

¶24    In his reply brief, Tappa asserts—for the first time—that he only consented to the search of his cell phone because law enforcement had already obtained his phone records from his cell phone carrier at the time he gave his consent.  We need not address arguments raised for the first time in a reply brief, *see A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998), or arguments raised for the first time on appeal, *see Tatera v. FMC Corp.*, 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810.  Moreover, Tappa does not develop any argument that his consent to the search of his phone was involuntary because law enforcement had already obtained his phone records from his cell phone carrier.  Although Tappa asserts in conclusory fashion that his consent was "a fruit of the poisonous tree," he does not further develop that argument or cite any legal authority supporting it.  We need not address undeveloped arguments or arguments unsupported by citations to legal authority. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶25    Tappa's claim that his trial attorney was ineffective by failing to investigate and discover that there were other yellow reciprocating saw blades available for purchase—aside from the DeWalt blade tested by the analyst from the state crime laboratory—is similarly meritless.  There is no significance to the fact that Tappa has identified another manufacturer that produces yellow saw blades.  That fact is fully consistent with the analyst's testimony at trial and with the discussion of the saw blade evidence in both sides' opening arguments and closing statements.  It was clear at trial that the DeWalt saw blade the analyst tested was only one possible source of yellow paint particles, similar to those recovered from Tappa's backpack and the ATM.  The analyst expressly testified that the DeWalt saw blade was merely a "control" and that no DeWalt saw blade had been submitted as "an actual case exhibit."  There was no evidence or

argument at trial to suggest that a DeWalt saw blade had been found in Tappa's possession. On this record, Tappa cannot show that it is reasonably probable the jury's verdicts would have been different had the jury heard that another manufacturer also produced yellow reciprocating saw blades.

¶26 Tappa also claims that his trial attorney was ineffective by failing to argue that the State "did not provide sufficient foundation and authentication" for the DeWalt saw blade. More specifically, Tappa contends trial counsel should have argued that the State was required to produce a receipt to prove that it had purchased the saw blade. Tappa argues that absent such a receipt, there was a "huge gap in the chain of custody." As a result, Tappa asserts "[w]e do not know if the [saw] blade was bought at a yard sale or what," and "we do not know whether the DeWalt blade sent to the crime lab was altered or not."

¶27 Tappa cites no legal authority in support of his claim that the State was required to produce a receipt for the DeWalt saw blade in order to authenticate, and provide a proper foundation for, that evidence. An investigator specifically testified at trial that he "purchased a comparison blade" after law enforcement failed to find a reciprocating saw blade in Tappa's garage. Other evidence at trial established that the State had submitted an "unused yellow DeWalt saw blade" to the state crime laboratory for testing; that an analyst had tested that blade; and that the blade was then returned to the Oconto Police Department. The chief of the Oconto Police Department testified that the saw blade returned from the state crime laboratory and entered into evidence at trial was the "DeWalt saw blade" that the investigator had purchased.

¶28 Under these circumstances, any argument that the State was required to produce a receipt in order to authenticate or lay a foundation for the DeWalt

12

saw blade would have failed. Moreover, it is not reasonably probable that the lack of a receipt—if brought to the jury's attention by trial counsel—would have had any effect on the jury's verdicts. Consequently, there would be no merit to a claim that Tappa's trial attorney was ineffective for failing to raise an argument regarding the lack of a receipt.

¶29 Because any claim that Tappa's trial attorney was ineffective with respect to the saw blade evidence would have failed, the record conclusively shows that Tappa's postconviction attorney was not ineffective by failing to raise that claim. Postconviction counsel was not deficient in this respect because the saw blade claim was not clearly stronger than the claims raised in Tappa's first postconviction motion and on direct appeal. In addition, because the saw blade claim would have failed, postconviction counsel's failure to raise that claim did not prejudice Tappa.

¶30 In summary, the record conclusively demonstrates that Tappa's postconviction attorney was not ineffective by failing to argue that Tappa's trial attorney was ineffective with respect to either the cell phone evidence or the saw blade evidence. As such, Tappa has failed to establish a sufficient reason for his failure to raise those claims in his first postconviction motion and on direct appeal. Tappa's current claims are therefore procedurally barred under WIS. STAT. § 974.06(4) and *Escalona-Naranjo*. Under these circumstances, the circuit court was not required to hold a hearing on Tappa's § 974.06 motion, and the court did not erroneously exercise its discretion by denying the motion without a hearing.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.