COURT OF APPEALS
DECISION
DATED AND FILED

August 9, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP510-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF609

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MARQUISE L. STEWART,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Marquise Stewart appeals from a judgment of conviction for attempted first-degree intentional homicide, armed burglary, and

criminal damage to property. Stewart also appeals a circuit court order denying his motion for postconviction relief. Stewart argues that hearsay was erroneously admitted at trial and its admission violated his right to confrontation, that he received ineffective assistance of counsel, and that we should reverse his conviction in the interest of justice. We reject his arguments and affirm.

## BACKGROUND

¶2 According to the criminal complaint, in the late night hours between June 17 and June 18, 2018, Stewart kicked in the front door of the home of the victim, David,[1] went to the bedroom where David was sleeping, and hit him in the head with a tire iron. Stewart had previously threatened to kill David, and he had also made threats against Audrey, who was staying in David's home that night and was pregnant with Stewart's child. Shortly after the attack, David received a text message, which he believed to be from Stewart, that read, "I tried to kill yo bictch ass … next time … imma get u rite."

¶3 At trial, David testified that Stewart had shouted, "Where that bitch at?" during the attack. David further testified that he recognized his attacker as Stewart, based on Stewart's size, voice, and dreadlocks with orange tips. One of the responding officers and an emergency room nurse both confirmed that David had identified Stewart as his attacker shortly after the incident. The emergency room nurse also testified that David had told her that Stewart had been threatening him and "the girl [who] was sleeping on [David's] couch." Several days after the

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2019-20), we use pseudonyms when referring to the victims. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

attack, David told another officer that he was "one hundred percent certain" that Stewart was his attacker.

¶4 The prosecution also presented evidence of threatening text messages that David had received both before and after the attack. Some of these messages referred to an abbreviated version of Audrey's name and "my baby momma," suggesting that the texts came from Stewart and related to Audrey. Among other threats, on or around June 12, 2018, David had received a text message that he believed to be from Stewart telling David that he had five days to live. The jury also heard a voicemail message that Stewart left for David the day after the attack, in which Stewart again threatened David's life for disrespecting him and for calling the police.

¶5 Additional evidence at trial included numerous Facebook posts from an account associated with Stewart, as well as messages sent from that account to an account associated with Audrey. One message sent shortly before the attack read, "If I Eva see [David] again I'mma hurt him and u and all y'all." Similar messages were sent between those accounts after the attack, saying, "I swear to god on my life imma kill dude before i get booked," and "I asked him nicely to stay tf … away from … u."

¶6 Several law enforcement officers testified about their investigation into the attack on David. Two officers testified that immediately after the attack, they received a dispatch report telling them to be on the lookout for a vehicle with the license plate ACB1916 that had reportedly fled the scene of the attack. Officers subsequently determined that this vehicle was registered to Stewart's sister at an address associated with Stewart. Officers observed the vehicle the day after the attack in the driveway of another residence connected to Stewart.

Officers subsequently stopped the vehicle while it was being driven by Stewart's brother and received consent to search it. In the trunk, officers found a tire iron with dried blood on it and a Chicago Bulls hat. DNA tests matched the blood on the tire iron to David, and the hat resembled one that Stewart was wearing in a recent Facebook picture.

¶7 The jury found Stewart guilty of attempted first-degree intentional homicide, armed burglary, and criminal damage to property. Stewart filed a postconviction motion in which he argued that the circuit court erred by admitting testimony relating to the dispatch report of a vehicle fleeing the scene of the attack. Stewart also alleged that he received ineffective assistance of counsel at trial. The court denied Stewart's postconviction motion without a hearing. Stewart now appeals.

## DISCUSSION

¶8 Stewart makes three sets of arguments on appeal. First, he raises several challenges to the circuit court's decision to admit the testimony regarding the dispatch report. Second, he argues that the court should have held a hearing on his postconviction motion alleging ineffective assistance of counsel. Third, he argues that he should be granted a new trial due to the cumulative effect of the alleged errors made by the court and his trial attorney. We address each argument below.

### I. Testimony about the Dispatch Report

¶9 Stewart's first set of challenges relates to testimony by two of the officers who were on duty the night of the attack, Sergeant Matthew Ollwerther and Officer Phillip Akins. Both officers testified that dispatch had alerted them to

be on the lookout for a vehicle with a license plate ACB1916, as reported by two callers. Stewart's trial attorney initially objected to this line of inquiry, arguing that Ollwerther's testimony about the anonymous calls was hearsay. The circuit court sustained this first objection.

¶10 After the prosecutor laid additional foundation for testimony about the dispatch report, Stewart's trial attorney made a second objection. This time, the circuit court overruled the objection, explaining that the testimony about the dispatch report was being offered not for the truth of the matter asserted but, rather, to explain what prompted officers to be on the lookout for a particular vehicle in connection with the attack. The court admonished the jury that the testimony about the dispatch report "is not to be considered as to the truth because it could be mistaken" and instead to "wait and see if the hearsay portion even gets proven later on because that could be mistaken information, it could be accurate information."

¶11 "A decision to admit or exclude evidence is within the circuit court's discretion." *State v. Gutierrez*, 2020 WI 52, ¶17, 391 Wis. 2d 799, 943 N.W.2d 870. We "uphold a circuit court's exercise of discretion to admit or exclude evidence where it examined the relevant facts, applied a proper legal standard, and using a demonstrated rational process, reached a reasonable conclusion." *Id.*, ¶21.

¶12 Stewart makes three interrelated arguments as to why the circuit court erred by admitting the officers' testimony about the dispatch report. First, he contends the testimony about the dispatch report was hearsay (the anonymous tip) within hearsay (the report from dispatch) that was not admissible under any exception. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the

truth of the matter asserted." WIS. STAT. § 908.01(3). That said, out-of-court statements can be "offered for the limited purpose of explaining the actions of investigative officers." *State v. Hines*, 173 Wis. 2d 850, 858-59, 496 N.W.2d 720 (Ct. App. 1993).

¶13 Here, the circuit court admitted the testimony about the dispatch report not for the truth of the information regarding the vehicle but, rather, for the limited purpose of explaining the course of law enforcement's investigation into the attack. Specifically, the dispatch report explained to the jury why officers were on the lookout for a particular vehicle and explained why officers stopped and searched that vehicle the following day. Through subsequent testimony, the prosecution established that the vehicle was registered to Stewart's sister at an address associated with Stewart. When officers stopped the vehicle, it was driven by Stewart's brother, and the trunk contained a tire iron with dried blood on it as well as a Chicago Bulls hat. The DNA in the blood on the tire iron matched a sample from David, while the hat matched one that Stewart had been wearing in a recent Facebook post.

¶14 Thus, by the conclusion of the trial, the prosecution had established an evidentiary connection between the vehicle, the attack, and Stewart, independent of the dispatch report. The dispatch report simply helped to explain why the officers undertook the investigative steps that ultimately yielded this evidentiary connection. Indeed, in overruling Stewart's second hearsay objection, the circuit court explained to the jury that it could not use the testimony about the dispatch report to establish the truth of the matter—namely, that the vehicle identified in the report was in fact observed fleeing the scene. The court's decision to admit the testimony with this limiting instruction is consistent with *Hines*, in which we concluded that out-of-court statements can be admitted for the

limited purpose of helping to explain the course of an investigation. *See **Hines***, 173 Wis. 2d at 859. We therefore conclude that the court acted within its permitted discretion in admitting the testimony about the dispatch report. *See **Gutierrez***, 391 Wis. 2d 799, ¶27 (explaining that appellate courts should "look for reasons to sustain a trial court's discretionary decision" about whether to admit or exclude evidence) (citation omitted).

¶15 Stewart's second argument relating to the dispatch report is that the subject testimony should have been excluded under WIS. STAT. § 904.03, which provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Stewart contends that the testimony about the dispatch report "was misleading, of unsubstantiated reliability and confusing under the circumstances." At the outset, we note that Stewart's trial attorney did not make this objection during trial. Therefore, this argument has been forfeited. *See **Tatera v. FMC Corp.***, 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810 ("Arguments raised for the first time on appeal are generally deemed forfeited.").

¶16 Even if Stewart had not forfeited this particular statutory argument, his argument fails on the merits. *See **State v. Erickson***, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999) ("[T]he [forfeiture] rule is one of judicial administration and … appellate courts have authority to ignore the [forfeiture]."). As the circuit court explained, its decision to admit testimony about the dispatch report helped to avoid confusion and delay by providing context for the officers' subsequent investigative actions. Moreover, introducing this dispatch report earlier in the case gave Stewart's trial attorney the opportunity to elicit testimony from Officer Akins

about the fact that he did not observe the vehicle identified in the dispatch report, even though he was traveling along the reported path of that vehicle and he expected to encounter it. Stewart's trial attorney was then able to use this testimony to cast doubt on the veracity of the anonymous report. Accordingly, Stewart has not established that the dispatch report unfairly prejudiced him or that it otherwise should have been excluded under WIS. STAT. § 904.03.

¶17 Stewart's third argument against the admission of the dispatch report is that it violated his right to confront witnesses under the Confrontation Clause in the Sixth Amendment to the United States Constitution, as well as article I, section 7 of the Wisconsin Constitution. As with his newly raised argument under WIS. STAT. § 904.03, Stewart's trial attorney did not make this constitutional objection in the circuit court, and Stewart has therefore forfeited it. *See State v. Marshall*, 113 Wis. 2d 643, 653, 335 N.W.2d 612 (1983) (concluding that the defendant's trial attorney waived a confrontation clause challenge by making only a hearsay objection).

¶18 Even if Stewart's trial attorney had properly raised a specific Confrontation Clause objection, we conclude that any potential error in admitting the testimony about the dispatch report was harmless. *See* WIS. STAT. § 901.03(1) ("[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected"); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (holding that Confrontation Clause errors are subject to harmless error review); *State v. Harvey*, 2002 WI 93, ¶49, 254 Wis. 2d 442, 647 N.W.2d 189 (a constitutional error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error").

8

¶19 Here, it is clear beyond a reasonable doubt that the jury would have found Stewart guilty even without the testimony about the dispatch report. At the outset, we note that the testimony about a report of a vehicle fleeing the scene was not by itself significant evidence against Stewart, especially because the vehicle was not registered to him, nor was there any testimony indicating that he had been observed in the vehicle. To the contrary, the unverified report of a vehicle fleeing the scene turned out to be a weak link in the prosecution's case, especially given Officer Akins' testimony that he expected to encounter the vehicle described in the report but he did not see it on the night of the attack. Indeed, Stewart's trial attorney used this fact during closing argument as one of many examples of how law enforcement engaged in confirmation bias and ignored facts that did not fit its case against Stewart.

¶20 In contrast to the officers' testimony about the unverified dispatch report, the incriminating evidence eventually found in the trunk of that vehicle provided a clear connection between the vehicle, the attack, and Stewart himself. This clear connection was accompanied by other strong evidence of Stewart's guilt, including David's consistent identification of Stewart as his attacker, Stewart's threats to harm David both before and after the attack, and numerous incriminating Facebook posts and messages.

¶21 In short, the evidence of Stewart's guilt was compelling without the dispatch report, which was at best equivocal and arguably helped the defense's theory that law enforcement engaged in confirmation bias and overlooked other potential suspects. We therefore conclude that it is clear beyond a reasonable doubt that the jury would have convicted Stewart even without the testimony about the dispatch report. *See Harvey*, 254 Wis. 2d 442, ¶49. Thus, any error in admitting that testimony was harmless.

## II. Ineffective Assistance of Counsel

¶22    We now turn to Stewart's argument that his trial attorney was constitutionally ineffective.  In his postconviction motion, Stewart argued that his trial attorney failed to object to references to the dispatch report during Officer Akins' testimony and the prosecutor's closing argument.  The circuit court denied Stewart's postconviction motion without a hearing.

¶23    A claim of ineffective assistance of counsel requires Stewart to show that his trial attorney's performance was deficient and that Stewart was prejudiced as a result.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish deficient performance, a defendant must allege facts to overcome the presumption that his or her trial counsel performed reasonably.  *See State v. Balliette*, 2011 WI 79, ¶¶25-27, 336 Wis. 2d 358, 805 N.W.2d 334.  To establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Sholar*, 2018 WI 53, ¶33, 381 Wis. 2d 560, 912 N.W.2d 89 (citation omitted).  Because a defendant has the burden of establishing both deficient performance and prejudice, "reviewing courts need not consider one prong if [a] defendant has failed to establish the other."  *State v. Chu*, 2002 WI App 98, ¶47, 253 Wis. 2d 666, 643 N.W.2d 878.

¶24    A circuit court must hold an evidentiary hearing if a postconviction motion alleges sufficient facts that, if true, would demonstrate both deficient performance and prejudice.  *See State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.  We review de novo the question of whether Stewart's postconviction motion alleged sufficient facts to require a hearing.  *Id*.  "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents

only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the circuit court then has discretion to deny a hearing. ***State v. Romero-Georgana***, 2014 WI 83, ¶30, 360 Wis. 2d 522, 849 N.W.2d 668. We review the circuit court's decision to deny a hearing for an erroneous exercise of discretion. ***Id.***

¶25 Stewart first points to his trial attorney's failure to object to Officer Akins' testimony about the dispatch report. This argument fails because the circuit court had just overruled the same objection during Sergeant Ollwerther's testimony. The State notes that Stewart's initial brief did not identify any authority that requires an attorney to repeat an objection that has already been overruled. Stewart states in his reply brief that he "has no further argument on the issue of ineffective assistance of counsel besides that raised in" his opening brief. Stewart has the burden of demonstrating that his trial attorney acted unreasonably. *See **Balliette***, 336 Wis. 2d 358, ¶27. We therefore conclude that Stewart's trial counsel was not deficient for failing to repeat an objection that would have been overruled.[2] *See **State v. Berggren***, 2009 WI App 82, ¶21, 320 Wis. 2d 209, 769

---

[2] Although we see no developed argument in Stewart's initial brief that his trial attorney was deficient for failing to make a Confrontation Clause objection, Stewart did make this argument in his postconviction motion. In his reply brief, Stewart asserts that "[t]he State took the position that Stewart's trial attorney sufficiently preserved the evidentiary issues raised by Stewart in the post conviction motion." Stewart appears to misunderstand the State's position, because the State expressly argued that Stewart's trial attorney forfeited the Confrontation Clause argument by failing to make a specific objection at trial.

This failure, however, did not prejudice Stewart. In denying Stewart's postconviction motion, the circuit court rejected the Confrontation Clause argument on the merits. Although we agree with the State that Stewart forfeited his Confrontation Clause argument by failing to make the specific objection at trial, we also determine that the Confrontation Clause violation, if any, was harmless. Thus, Stewart cannot establish a reasonable probability that the result of the trial would have been different if his trial attorney had made a Confrontation Clause objection. *See **State v. Trawitzki***, 2001 WI 77, ¶40, 244 Wis. 2d 523, 628 N.W.2d 801.

N.W.2d 110 (concluding that an attorney was not ineffective for failing to file a motion in limine that would have been denied).

¶26     Stewart also argues that his trial attorney was ineffective for failing to object to the prosecutor's reference to the dispatch report during closing argument. Specifically, after reminding the jury of the threats that Stewart had made against David, the prosecutor then discussed the incriminating evidence found in the vehicle that was reportedly observed near the attack and that was registered to Stewart's sister. In connecting the vehicle to Stewart, the prosecutor stated:

> But how else do we know that this defendant, Marquise Stewart, is responsible for those violent acts? Well, we have a car. Officers testified that a car was reportedly seen leaving the scene at—and that a license plate was a Wisconsin license plate ACB1916, and it was a silver Pontiac Bonneville.

> When that car is looked into, it's registered to Quinita Dickens, the defendant's sister. It comes back to an address at 825 West—Westfield Street in Oshkosh, Wisconsin, one of the addresses that the defendant lists as his when Sergeant Rabas runs him in-house to try to determine where he might be.

Stewart argues that this portion of the prosecutor's argument misused the testimony about the dispatch report in a manner that was inconsistent with the circuit court's limiting instruction that the dispatch report not be used for the truth of the matter stated therein. Stewart further contends that an evidentiary hearing is required to determine whether there was a tactical reason for his trial attorney's failure to object.

¶27     We disagree that the prosecutor misused the testimony about the dispatch report. By the time of closing arguments, the jury had heard additional

testimony connecting the vehicle to the attack and to Stewart, including testimony about the vehicle being registered to Stewart's sister at an address associated with Stewart, along with evidence incriminating Stewart being found in its trunk. Given these many evidentiary connections between the vehicle, the attack, and Stewart, there was nothing objectionable in the prosecutor's closing argument.

¶28 Moreover, even if there were a basis for objection, the trial record suggests that Stewart's trial attorney made a tactical choice not to object to the prosecutor's reference to the dispatch report, but rather to highlight this report as the first of many purported weak links in the case against Stewart. Specifically, Stewart's trial attorney argued that law enforcement's focus on Stewart was a result of confirmation bias that caused them to ignore any facts that did not point to their main suspect. Stewart's trial attorney urged the jury to focus on the "objective things" that the State was ignoring, starting with the fact that the anonymous report of the vehicle at the scene was never verified. The remainder of Stewart's closing argument continued with this theme, with his trial attorney pointing to several other weaknesses in the case against Stewart that the State had supposedly ignored. His trial attorney's decision not to object to the prosecutor's reference to the dispatch report, but instead to incorporate it into Stewart's own closing argument, strikes us as an effective tactic under the circumstances. In short, even if there was a viable objection to the prosecutor's reference to the dispatch report, Stewart has failed to overcome the presumption that his trial attorney performed reasonably. *See Balliette*, 336 Wis. 2d 358, ¶27 ("[T]he law affords counsel the benefit of the doubt; there is a presumption that counsel is effective unless shown otherwise by the defendant.").

¶29 Because Stewart did not allege sufficient facts to demonstrate that his trial attorney rendered deficient performance and that he was prejudiced, we

see no error in the circuit court's discretionary decision to deny Stewart's postconviction motion without an evidentiary hearing. *See Romero-Georgana*, 360 Wis. 2d 522, ¶71 (affirming the circuit court's decision to deny a postconviction motion without a hearing because the motion "failed to sufficiently allege facts that, if true, would entitle [the defendant] to relief").

### III. Request for a New Trial

¶30    Stewart's final argument is that the errors discussed in Sections I and II above "were sufficiently prejudicial to Stewart to undermine confidence in the outcome of the trial." To support this argument, Stewart points to *State v. Delao*, 2002 WI 49, ¶60, 252 Wis. 2d 289, 643 N.W.2d 480. In *Delao*, our supreme court explained that errors admitting evidence do not warrant a new trial unless they prejudice the defendant. *Id.*

¶31    Stewart contends that the errors by the circuit court and his trial attorney prejudiced him "[o]n the critical issue of placing a vehicle associated with Stewart near the scene of the crime." This argument overlooks the incriminating evidence found in the trunk of the vehicle—namely, the tire iron containing David's blood and the Chicago Bulls hat. This evidence was sufficient to connect the vehicle to the attack, even without the dispatch report. Thus, Stewart has not shown that he was prejudiced by testimony about the dispatch report or the reference to the vehicle fleeing the scene during closing argument.

¶32    Stewart also points to *State v. Stuart*, 2005 WI 47, ¶41, 279 Wis. 2d 659, 695 N.W.2d 259. In *Stuart*, our supreme court identified several factors that guide the determination of whether a particular error is harmless:

> [T]he frequency of the error, the importance of the
> erroneously admitted evidence, the presence or absence of

> evidence corroborating or contradicting the erroneously admitted evidence, whether the erroneously admitted evidence duplicates untainted evidence, the nature of the defense, the nature of the State's case, and the overall strength of the State's case.

*Id.*

¶33    Although we have already rejected Stewart's argument that the circuit court erred by admitting the testimony about the dispatch report, the factors identified in *Stuart* support the conclusion that any error was harmless.  As we explained above in Section I, the testimony was helpful to the jury in terms of explaining the course of law enforcement's investigation, but otherwise it was not important to the State's case against Stewart.  In addition, by the end of the trial, there was ample evidence to corroborate information in the dispatch report—most significantly, the incriminating evidence found in the trunk of the vehicle.  Moreover, when coupled with David's consistent identification of Stewart as his attacker, along with the threats of harm that Stewart made against David both before and after the attack, the State's case against Stewart was compelling even without the testimony about the dispatch report.  Finally, the nature of the defense also supports our harmless error analysis because Stewart's trial attorney adroitly incorporated the fact that officers were unable to verify parts of the dispatch report as part of the defense's argument that the State's investigation was based on confirmation bias and that the State ignored evidence that did not fit its theory of the case.

¶34    We therefore conclude that Stewart has not demonstrated that the errors at trial (if any) warranted a new trial.

15

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.